STATE OF NEBRASKA, APPELLEE, V. MICHAEL G. BARTLETT, APPELLANT.

525 N.W.2d 237

Filed December 13, 1994.   No. A-93-885.

Russell W. Harford, of Crites, Shaffer, Connealy, Watson, Wefso & Harford, for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

SIEVERS, Chief Judge, and HANNON and MUES, Judges.

MUES, Judge.
Michael G. Bartlett appeals from his conviction of driving while intoxicated and causing serious bodily injury. Bartlett was driving a pickup truck in Chadron on May 1, 1993, when he ran into Kristi Olson as she crossed the street. Olson suffered internal injuries and a broken femur as a result of the incident. Bartlett assigns several errors. However, since we conclude that plain error occurred in the giving of the jury instruction on the material elements of the crime and that remand for retrial is necessary, we reach only those errors likely to recur at said retrial.

## I. STATEMENT OF FACTS
On April 30, 1993, Michael G. Bartlett; John Mejia, Jr.; and Don Quinn visited several bars in Chadron. After the bars closed, Bartlett, Mejia, and Quinn left in Quinn's pickup truck. Quinn drove to a convenience store, where Bartlett then moved to the driver's seat and drove the three men west of Chadron in the direction of Crawford. Bartlett then drove back to Chadron and, after driving around the town, headed west on 10th Street.

Mejia sat between Bartlett and Quinn in the cab of the truck. About one and one-half to two blocks from the intersection of 10th and Main Streets at approximately 1:30 a.m., Mejia saw about five or six people get out of a car parked on the south side of the street. Included in the group was the victim, Kristi Olson. Mejia saw two or three of the people from the car run north across 10th Street. Mejia testified he saw another two or three people from the car cross the eastbound lane of 10th Street. Mejia testified he saw Olson, who was standing in the middle of the street, take several steps into the lane in which Bartlett was driving and then lunge back. Staci Starkebaum, who was one of the members of the group, testified that three people who got out of the car crossed 10th Street, walking north. Starkebaum stated that she and Olson followed the three and crossed 10th Street to the middle. Starkebaum testified that Olson was about two steps in front of her when Starkebaum saw an approaching pickup truck. Starkebaum stated that she called out to Olson, who looked up, hesitated, and then ran for the north curb of 10th Street. Starkebaum stated that Olson was about 3 feet north of the centerline of 10th Street when Olson began to run across the lane. The pickup was about half a block away from Olson. Starkebaum stated that at the same time, the pickup truck swerved to the north curb, and Olson was struck. Starkebaum stated that Olson was carrying a plastic drinking container in her hand, and when Olson was hit, the container burst open on the pickup's windshield. Olson was hit by the left front corner of the pickup and suffered internal injuries and a broken femur.

Officer Michael Samp investigated the accident scene and interviewed the witnesses. Samp testified that he found skid marks, a plastic squeeze-type drink container, and fragments of a bug shield from the front of the pickup. Samp testified that from the skid marks left on the pavement, he calculated that the pickup was traveling at roughly 24 miles per hour. The speed limit on 10th Street at the location of the accident was 20 to 25 miles per hour. At the point that Olson was hit by the truck, the truck was traveling at approximately 15$\frac{1}{2}$ to 16 miles per hour.

Samp testified that Olson's drinking container was tested for the presence of alcohol and that the test was positive. Samp

testified that it smelled as though the container held whiskey and Coke. Samp stated that he observed a bottle of Jack Daniels between the front seats in Olson's car. Dale Thurston, a passenger in Olson's car, testified that earlier in the evening she, Olson, and the other passengers bought soft drinks at Taco John's, using their refillable squeeze-type drink containers.

Witnesses at the scene told Samp that Bartlett was the driver of the pickup. Bartlett had left the scene of the accident at some point prior to Samp's arrival. Bartlett was eventually pulled over as he and his wife were driving in town at about 4 a.m. Samp testified that Bartlett told him he had not had any alcohol to drink after 12:30 a.m. Samp testified that when he talked to Bartlett, he could detect an odor of alcohol on Bartlett's breath and Bartlett's eyes were slightly bloodshot. Bartlett was arrested, and his blood was tested for the presence of alcohol. Bartlett's blood alcohol content at 5 a.m. was .12 percent.

Bartlett was charged with driving while under the influence and causing serious bodily injury, second degree assault, leaving the scene of an accident, and willful reckless driving. After a jury was passed for cause and each side exercised its peremptory challenges, the county attorney's motion to appoint a special deputy county attorney was granted over the objection of Bartlett. Trial was held, and the jury found Bartlett guilty of violating Neb. Rev. Stat. § 39-669.39 (Cum. Supp. 1992), driving while intoxicated and causing serious bodily injury. Bartlett was sentenced to 1 year's imprisonment in the penitentiary.

## II. ASSIGNMENTS OF ERROR

Bartlett alleges that the district court erred (1) when it granted the county attorney's motion to appoint a special prosecutor; (2) when it omitted the word "proximate" from the jury instruction on the material elements of driving while intoxicated and causing serious bodily injury; (3) when it did not define "proximate cause" as Bartlett requested in his proffered jury instruction; (4) when, during a sentencing hearing, it questioned Bartlett's expert witness regarding Bartlett's blood alcohol content; and (5) when it imposed an excessive sentence upon Bartlett.

### III. SCOPE OF REVIEW

If the jury instructions, when read together, correctly state the law, are not misleading, and adequately state the issues, there is no prejudicial error. *State v. Van Ackeren,* 242 Neb. 479, 495 N.W.2d 630 (1993).

Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *State v. Myers,* 244 Neb. 905, 510 N.W.2d 58 (1994).

An appellate court has an obligation to reach an independent, correct conclusion on a statute's interpretation, irrespective of the determination made by the court below, as statutory interpretation is a matter of law. *Anderson v. Nashua Corp.,* 246 Neb. 420, 519 N.W.2d 275 (1994).

### IV. ANALYSIS

#### 1. PLAIN ERROR

Because it was plain error to omit from the jury instructions that it is a material element of the crime that the act of driving while intoxicated must proximately cause serious bodily injury, Bartlett's conviction must be reversed and the cause remanded for a new trial. We will first address the error in the instruction given to the jury on the material elements of the crime.

Ordinarily, to be considered by an appellate court, errors must be assigned and discussed in the brief of the one claiming that prejudicial error has occurred. *State v. Myers, supra; State v. Vermuele,* 241 Neb. 923, 492 N.W.2d 24 (1992); Neb. Ct. R. of Prac. 9D(1)d (rev. 1992). While an appellate court does not consider assignments of error not listed and discussed in the briefs, it always reserves the right to note plain error which was not objected to at trial or assigned as error on appeal but which is plainly evident from the record and is of "such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process." *State v. Myers,* 244 Neb. at 908, 510 N.W.2d at 62. Accord *Design Data Corp. v. Maryland Cas. Co.,* 243 Neb. 945, 503 N.W.2d 552 (1993).

It is the duty of the trial judge to instruct the jury on the pertinent law of the case, whether requested to do so or not, and an instruction or instructions which by the

omission of certain elements has the effect of withdrawing from the jury an essential issue or element in the case is prejudicially erroneous.

*State v. Myers*, 244 Neb. at 909, 510 N.W.2d at 63. Accord *State v. Breaker*, 178 Neb. 887, 136 N.W.2d 161 (1965).

■ When the words of a statute are plain, direct, and unambiguous, no construction is necessary to determine the statute's meaning. *Association of Commonwealth Claimants v. Moylan*, 246 Neb. 88, 517 N.W.2d 94 (1994). An appellate court has an obligation to reach an independent, correct conclusion on a statute's interpretation, irrespective of the determination made by the court below, as statutory interpretation is a matter of law. *Anderson v. Nashua Corp., supra*. In addition, an appellate court will, if possible, try to avoid a construction which would lead to absurd, unconscionable, or unjust results. *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993).

Bartlett was charged with and convicted of driving under the influence and causing serious bodily injury in violation of § 39-669.39. Under § 39-669.39, "[a]ny person who, while operating a motor vehicle in violation of section 39-669.07 or 39-669.08, proximately causes serious bodily injury to another person shall be guilty of a Class IV felony . . . ."

In the case at hand, the district court gave the following jury instruction regarding the charge of driving while under the influence and causing serious bodily damage:

The material elements of this charge are:

1. Mr. Bartlett was operating a motor vehicle; and,

2. when he did so, he caused serious bodily injury to Kristi Olson; and,

3. when he did so, he had a concentration of ten-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his blood; and,

4. he did so on or about May 1, 1993, in Dawes County, Nebraska.

■ We find under a "plain meaning" interpretation of the statute that the material elements of the crime of driving while intoxicated and causing serious bodily injury are (1) the defendant must have been operating a motor vehicle; (2) the defendant must have been operating the vehicle in violation of

Neb. Rev. Stat. § 39-669.07 (Cum. Supp. 1992) (driving while intoxicated); and (3) the defendant's act of driving while intoxicated, in violation of § 39-669.07, must proximately cause serious bodily injury. To interpret the statute otherwise, that is, to find that the statute criminalizes any bodily injury which the defendant proximately causes if the defendant happens to be driving while intoxicated, would result in an absurdity. If we were to interpret the statute in such a way, it would impose strict liability upon a defendant for an act such as assaulting his passenger, if it caused serious bodily injury, so long as the defendant happened to be driving and happened to be intoxicated in violation of § 39-669.07. Rather, the conduct which the statute seeks to criminalize is some *act* of the defendant which proximately causes serious bodily injury. The only act mentioned in the statute is the act of driving while intoxicated. Therefore, we believe the act of driving while intoxicated must proximately cause the injury.

Even if we were to find the statute ambiguous, the legislative history regarding the intent of the Legislature supports our finding that a material element of the crime is that the defendant's act of driving while intoxicated must proximately cause the injury. Motor vehicle homicide is criminalized under Neb. Rev. Stat. § 28-306 (Cum. Supp. 1992), which provides:

> (1) A person who causes the death of another unintentionally while engaged in the operation of a motor vehicle in violation of the law of the State of Nebraska or in violation of any city or village ordinance commits motor vehicle homicide.
>
> . . . .
>
> . . . If the proximate cause of the death of another is the operation of a motor vehicle in violation of section 39-669.01 or 39-669.03 [or 39-669.07], motor vehicle homicide is a Class IV felony.

In order to find a defendant guilty of felony motor vehicle homicide under § 28-306 by driving while intoxicated, the State must prove that the defendant's intoxication was the proximate cause of the accident and resulting death. *State v. Ring*, 233 Neb. 720, 447 N.W.2d 908 (1989).

The introducer of the legislation creating the offense of driving while intoxicated and causing serious bodily injury, State Senator Hoagland, stated that the legislation

> sets out a different set of criminal penalties for those who will injure someone while drunk driving, as distinguished from mere drunk driving. Under the current law, you can be charged with a homicide offense, motor vehicular homicide, if you kill somebody while drunk. Anything short of that is simple drunk driving. In other words, if you seriously injure someone in an auto accident so they lose a leg or lose an arm, the penalty is no different than if you are simply weaving down the road. So this would fill that space in the criminal law that other jurisdictions, most other jurisdictions, have taken care of.

Floor Debate, L.B. 631, Judiciary Committee, 89th Leg. 2d Sess. 7769 (Jan. 17, 1986).

Causing serious bodily injury by driving while intoxicated and motor vehicle homicide by driving while intoxicated are both Class IV felonies and thus carry the same potential penalty. As stated above, to convict one of motor vehicle homicide by driving while intoxicated, the State is required to prove a nexus between the death and the defendant's law violation, i.e., the State must prove that the defendant's driving while intoxicated proximately caused the death of a person. We believe that if the Legislature adopted § 39-669.39 in an effort, inter alia, to create a criminal statute to fill the space between the offenses of motor vehicle homicide by driving while intoxicated and simple driving while intoxicated, it intended to criminalize the same act of the defendant as is criminalized under the motor vehicle homicide statute, when the result is serious bodily injury rather than death. Therefore, proof of a nexus between the defendant's driving while intoxicated and the serious bodily injury is required. We do not believe the Legislature intended to punish someone whose conduct causes serious bodily injury with the same penalty as that imposed upon someone whose conduct kills a person and, at the same time, require less proof of causation to convict of the former crime than to convict of the latter. We believe such a construction is unconscionable, if not absurd.

In sum, the court's instruction omitted the material element that Bartlett's action of driving while intoxicated proximately caused Olson's serious bodily injury. The omission of a material element of the crime from the instruction is plain error, and therefore Bartlett's conviction must be reversed.

The jury instructions were made even more confusing by the addition of the following language which appeared on the same page as the instruction on the material elements of the crime:

> The law of the State of Nebraska also provides:

> No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to stop.

> Every pedestrian who crosses a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway.

> Notwithstanding the other provisions, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give an audible signal when necessary and shall exercise proper precaution upon observing an obviously confused or incapacitated person upon a roadway.

The instructions do not tell the jury what to do with these rules of the road. Furthermore, because the instruction on the material elements of the crime does not name the act which must cause the bodily injury, the last paragraph arguably suggests to the jury that Bartlett could have been found guilty of a Class IV felony because he failed to honk his horn. The instructions regarding the rules of the road, although commonplace in a civil negligence trial, could only mislead and confuse the jury, and therefore, it was error to include them. See *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993).

## 2. ASSIGNED ERRORS

Because we have concluded that a new trial is necessary, we now address only those errors assigned which appear relevant to such retrial. Thus, the assigned errors which pertain to the appointment of a special prosecutor, the sentencing hearing, and the sentence itself will not be discussed.

(a) Use of the Word "Proximate" in the Jury Instructions

Bartlett argues that in paragraph 2 of the above instruction on the material elements of the crime, the instruction should read "when he did so, he *proximately* caused serious bodily injury to Kristi Olson." The district court refused to so instruct, stating, "I think the fact that I don't use proximate cause is in keeping with my own theory of the instructions to the jury without using legalise [sic] . . . ." While inserting the word "proximately" into paragraph 2 would still not have correctly set forth the material elements of the crime, we would emphasize upon retrial that § 39-669.39 provides that "proximate cause" is part of the crime. Legalese or not, proximate cause is a material element; therefore, the words "proximate cause," as opposed to "cause," should be used in an instruction on the elements of § 39-669.39. In addition, proximate cause should then be defined within the instructions. *Enyeart v. Swartz*, 218 Neb. 425, 355 N.W.2d 786 (1984).

(b) Jury Instruction on Efficient Intervening Cause

Bartlett alleges that the trial court erred when it did not give the jury his tendered jury instruction on the definition of proximate cause. Bartlett requested that the trial court give the following instruction regarding proximate cause: "Defendant's conduct is the proximate cause of Kristi Ols[o]n's injury if the conduct came in a natural and continuous sequence, unbroken by an efficient intervening cause, and without which the injury would not have occurred." Instead, the court's jury instruction regarding the issue of causation was: "Mr. Bartlett caused injury to Kristi Olson if the injury occurred in a natural and continuous sequence from his acts and if without those acts the injury would not have occurred."

Bartlett alleges that the trial court erred when it instructed the jury on causation, because the court's definitional instruction of cause omitted the phrase "unbroken by an efficient intervening cause." Bartlett claims that had the court given the jury his tendered instruction on proximate cause, the jury "could have found that Kristi Ols[o]n's darting into the path of the vehicle being driven by Mr. Bartlett was an 'efficient intervening cause' that broke the causal connection between

[Bartlett's driving and Olson's injuries]." Brief for appellant at 24.

■ As stated, Bartlett relies upon Olson's actions as breaking the causal connection between his driving and her injuries. He characterizes her acts as constituting an efficient intervening cause. An efficient intervening cause or superseding cause is a new and independent act of a third person or another force which breaks the causal connection between the original wrong and the injury. It is itself a proximate cause and, indeed, is *the* proximate cause of the injury in question. See, e.g., *Mundt v. Northwestern Bell Tel. Co.*, 230 Neb. 192, 430 N.W.2d 530 (1988); *Delaware v. Valls*, 226 Neb. 140, 409 N.W.2d 621 (1987). Thus, proving that a defendant's conduct was *a* proximate cause necessarily proves that another cause (intervening or superseding cause) was not the *sole* proximate cause. See NJI2d Civ. 3.43 comment.

Bartlett does not argue the existence of any evidence in this case of any new or independent act of third persons or another force which intervened as the sole proximate cause of the injury to Olson. There is no such evidence. Olson was directly and contemporaneously involved in the incident which gave rise to her bodily injury. In short, Bartlett's argument, when carefully examined, is not that the facts justified the giving of an efficient intervening cause instruction. They clearly do not. He did not request an instruction on the definition of efficient intervening cause at trial, nor does he urge on appeal that the trial court erred in failing to give such an instruction. Such a definitional instruction would have been required had the phrase been included in the proximate cause instruction. See *Mundt v. Northwestern Bell Tel. Co., supra*. Rather, in essence, what Bartlett is actually proposing is that Olson's own negligence contributed to cause this injury and that the inclusion of the disputed phrase would have aided his argument to the jury.

The defendant in *State v. Rotella*, 196 Neb. 741, 246 N.W.2d 74 (1976), within the context of a motor vehicle homicide charge, argued that the jury should have been allowed to consider the victim's behavior when deciding upon whether the defendant's conduct proximately caused the victim's death. The *Rotella* court found:

However, contributory negligence is not a defense to a charge of motor vehicle homicide. The issue is whether defendant's violation of law was a contributing factor to the death. See Vaca v. State (1948), 150 Neb. 516, 34 N. W. 2d 873, in which we held: "When one drives a motor vehicle in violation of law pertaining to the operation of such vehicles on the public highway, and, in so doing, as a result of the violation of law, causes death to another, he is guilty of manslaughter, and neither contributory negligence of deceased nor the driver of the car in which deceased was riding when killed, can be invoked to relieve the former of criminal responsibility." See, also, Hoffman v. State (1956), 162 Neb. 806, 77 N. W. 2d 592. We there held: "In criminal cases prosecuted under the motor vehicle homicide act, the negligence or unlawful acts of another driver which proximately contributed to the death, as distinguished from an independent intervening cause thereof, is not a defense if the evidence is sufficient to sustain a conclusion beyond a reasonable doubt that the defendant's negligence or unlawful acts were also a proximate cause of the death of another."

196 Neb. at 743-44, 246 N.W.2d at 76.

■ Olson's actions were not a defense to this charge so long as Bartlett's conduct was a contributing factor, i.e., also a proximate cause. Only if the jury had concluded that the victim's actions were the *sole proximate cause* of her injury could the defendant have been relieved from criminal responsibility for driving while intoxicated and causing serious bodily injury. See, e.g., *State v. Ruyle,* 234 Neb. 760, 452 N.W.2d 734 (1990).

Omission of the phrase "unbroken by an efficient intervening cause" did not render the definition of proximate cause defective. Although the definition of proximate cause is often accompanied with this language, see, e.g., *State v. Ruyle, supra,* such phrase is not included in the proximate cause instruction recommended by NJI2d Crim. 4.1, and its omission in no way lessens the State's burden of proof. The State is still required, under a correct instruction, to prove beyond a reasonable doubt that Bartlett's conduct was a proximate cause

of Olson's injuries.

For clarification purposes, we note that because of our initial conclusion that the instruction on the material element of the crime was erroneous and must be corrected upon retrial, the language which instructs the jury on the issue of proximate cause must be consistent and should instruct that the conduct which proximately causes the serious bodily injury must be the defendant's act of driving while intoxicated. Thus, our conclusion on the instant assignment of error is limited to finding no error in omitting the phrase "unbroken by an efficient intervening cause" from the instruction on proximate cause.

## V. CONCLUSION

We find that the jury instruction on the material elements of the crime of driving while intoxicated and causing serious bodily injury did not include the element that the act of driving while intoxicated must proximately cause the serious bodily injury. As a result, we hold that there was plain error and must reverse on that basis. In addition, we find that in an instruction on the material elements, the trial court should use the words "proximate cause" rather than "cause." The trial court should omit instructions on certain rules of the road from an instruction on the material elements of the crime. Finally, we find that there was no error in omitting the phrase "unbroken by an efficient intervening cause" from the instruction on causation.

REVERSED AND REMANDED FOR A NEW TRIAL.